IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DON M. DOWNING and ADAM J. LEVITT, on behalf of themselves and those similarly situated,<br><br>                  Plaintiffs,<br><br>v.<br><br>RICELAND FOODS, INC.<br><br>                  Defendant. | Case No. _____ |

## CLASS ACTION COMPLAINT

Plaintiffs Don M. Downing and Adam J. Levitt, Court-appointed Co-Lead Counsel in the related multidistrict litigation captioned *In re Genetically Modified Rice Litigation*, 4:06 MD 1811-CDP, pending before this Court (hereinafter the "Rice MDL") on behalf of themselves, as well as the below-defined Class (the "Class"), and additionally in their capacity as Co-Trustees of the Common Benefit Fund Qualified Settlement Fund Trust (the "CBF Trust") created and subsequently amended, by orders of the Court in the Rice MDL dated June 9, 2010 (Rice MDL Dkt No. 2992) and December 15, 2011 (Rice MDL Dkt. No. 4344) (collectively, the "CBF Trust Orders"), allege against defendant Riceland Foods, Inc. ("Riceland" or "Defendant") as follows:

### I. NATURE OF THE ACTION

1.  Plaintiffs, individually and on behalf of the other members of the Class, seek to recover against Defendant for unjust enrichment and quantum meruit as a result of the substantial

1

benefit Defendant received from the common benefit services, materials and/or related expense items provided or paid for by Class members in the Rice MDL.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). There are more than 100 members in the below-defined Class; the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and Plaintiffs and other members of the Class are citizens of different states than the Defendant.

3. This Court has personal jurisdiction over Defendant because it actively does and/or has done business in Missouri (including asserting claims in the Rice MDL, filing numerous pleadings and papers in the Rice MDL, attending hearings as well as numerous depositions in the Rice MDL (in locations including St. Louis, Missouri) and directing numerous telephone calls, e-mails, and other correspondence into this District pertaining to the subject matter of this litigation, and has sufficient minimum contacts in Missouri, by virtue of its involvement in the Rice MDL pending in this District to render the exercise of jurisdiction by this Court proper under the Due Process Clause of the United States Constitution. Also, personal jurisdiction is proper because Defendant transacts business within Missouri, thereby subjecting Defendant to personal jurisdiction under Missouri's Long-Arm Statute. Mo. Rev. Stat. § 506.500.

4. Venue is appropriate in this District under 28 U.S.C. § 1391(a)(2) and (b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant has conducted substantial business in this District or otherwise has sufficient contacts with this District to subject it to personal jurisdiction in this District.

## III. PARTIES

*Named Plaintiffs*

5.  Don M. Downing is a citizen of the State of Missouri and is one of Plaintiffs' Court-appointed Co-Lead Counsel in the Rice MDL.

6.  Adam J. Levitt is a citizen of the State of Illinois and is one of Plaintiffs' Court-appointed Co-Lead Counsel in the Rice MDL.

*Defendant*

7.  Riceland is a farmers' cooperative organized under the laws of the state of Arkansas with its principal place of business in Stuttgart, Arkansas. Riceland is a rice miller and marketer.

8.  Riceland is or was a defendant in certain cases, and a plaintiff asserting cross-claims or third-party claims against various Bayer entities,[1] in the Rice MDL. Riceland filed numerous pleadings, motions, responses and other papers, defended, took and/or attended numerous depositions (in locations including St. Louis, Missouri), and otherwise actively participated in the Rice MDL, participated in court sessions, and other meetings in this District, and has directed telephone calls, e-mails, and other correspondence into this District pertaining to the subject matter of this litigation.

## IV. SUBSTANTIVE ALLEGATIONS

*The Rice MDL and Related Actions*

9.  On August 18, 2006, the USDA announced that the U.S. rice supply had been contaminated with Bayer's genetically modified LLRICE (the "LLRICE Contamination"). Soon

---

[1] For purposes of this complaint, "Bayer" is defined as Bayer CropScience LP, Bayer CropScience Holding, Inc., Bayer CropScience Inc., Bayer CropScience LLC, Stoneville Pedigreed Seed Company, Bayer Corporation, Bayer AG, Bayer CropScience AG, Bayer BioScience NV, Bayer CropScience Holding SA and Bayer CropScience SA.

3

thereafter, thousands of rice producers and numerous non-producers asserted claims against various Bayer entities in both federal and state courts.

10. Various claims were filed against Bayer and Defendant in the federal Rice MDL, and in state courts. Defendant filed claims, cross claims, and/or counterclaims seeking relief against Bayer in the federal Rice MDL as well as state courts including the matters styled *Meins, et al. v. Bayer AG, et al.*, Case No. CV-2008-108, in the Circuit Court of Arkansas County, Arkansas, Stuttgart District and *Kyle v. Bayer AG*, Case No. CV-2008-107, in the Circuit Court of Woodruff County, Arkansas.

11. On December 19, 2006, in an effort to streamline and coordinate the large number of lawsuits filed, the Judicial Panel on Multidistrict Litigation ("JPML") transferred all pending federal court actions pertaining to the above-referenced LLRICE Contamination, and all tag-along federal actions against various Bayer entities to this Court, which then came before the Honorable Catherine D. Perry.

12. Once all related federal cases were transferred for coordinated and/or consolidated proceedings – in the form of the previously-described Rice MDL – the Court appointed Don Downing as Plaintiffs' Co-Lead and Liaison Counsel and appointed Adam Levitt as Plaintiffs' Co-Lead Counsel. The Court also appointed Richard J. Arsenault, Scott E. Poynter, William Chaney, Ralph E. Chapman, Joseph R. Whatley and Stephen A. Weiss to the Plaintiffs' Executive Committee. Plaintiffs' Co-Lead Counsel and Executive Committee are sometimes referred to herein as the "Leadership Group." The Order Appointing Co-Lead Counsel and the Executive Committee, dated April 18, 2007, (the "Leadership Order") is Dkt No. 182 in the Rice MDL.

13. The Leadership Order in the Rice MDL explicitly provided that Lead Counsel "shall act on behalf of all plaintiffs" in the Rice MDL as follows:

4

   1. To direct and execute on behalf of Plaintiffs the filing of pleadings and other documents with the Court;

   2. To direct and manage pretrial proceedings on behalf of all plaintiffs, including the briefing and argument of motions and the conduct of all types of discovery proceedings; (emphasis added).

   3. To seek the assistance of other plaintiffs' counsel, including but not limited to those on the Executive Committee, in performance of all work necessary for the prosecution of the case, including investigation, research, briefing, and discovery, with particular attention to using efficiently the resources of the other Plaintiffs' counsel in a manner commensurate with those lawyers' resources and experience;

   4. To direct the selection of counsel to act as spokespersons before the Court;

   5. To call and chair meetings of Plaintiffs' counsel;

   6. To direct and conduct settlement negotiations;

   7. To direct and arrange a system for keeping and collecting all Plaintiffs' counsel's time records; and

   8. To supervise any other matters concerning the prosecution or resolution of this litigation." *Id.*

  14. Over the next five years, Plaintiffs and the Class invested considerable time and financial resources to provide, and did provide, substantial benefits to all persons and entities asserting claims against Bayer entities - in both the Rice MDL, as well as in state court proceedings – which also substantially benefitted Defendant.

  15. These common benefit efforts include, but are not limited to: (a) the substantial factual investigation and legal research under the laws of Missouri, Arkansas, Mississippi, Louisiana, and Texas, in connection with the drafting of a consolidated master complaint that was used as a model for later complaints in both state court and federal court; (b) spearheading the extensive document discovery efforts (including drafting and responding to numerous discovery requests, serving subpoenas on numerous third parties, and reviewing, coding and managing over 2.8 million pages of documents in order to lay the groundwork for the depositions

that followed); (c) engaging in extensive and protracted meet-and-confer discussions with Bayer's counsel and counsel for third parties with respect to discovery and other case-related issues and engaging in motion practice relating thereto; (d) taking or defending 167 depositions across the United States and internationally, which provided important fact discovery and persuasive trial evidence for all plaintiffs; (e) successful effectuation of service on the foreign Bayer entities and opposition to Bayer's motion to dismiss the claims against the foreign Bayer entities for lack of personal jurisdiction, which paved the way for all plaintiffs (including Defendant's clients) to obtain discovery from the foreign Bayer entities; (f) coordination of pre-trial proceedings with all plaintiffs' counsel in the Rice MDL and in related state court actions, including Defendant; (g) identifying, interviewing and selecting from numerous candidates, consulting and testifying experts; (h) prosecuting and defending numerous and significant dispositive, evidentiary and other motions, including the successful opposition to Bayer's summary judgment motions, which contained arguments that, if accepted, would have cut off the right to recovery, in whole or in part, for every plaintiff in a state with the same or similar laws; (i) preparation of numerous opening and rebuttal expert reports (and taking discovery pertaining to Bayer's experts); (j) preparing for numerous trials, including by, among other things, holding multiple mock trials and meeting with jury consultants to refine their trial strategy and the evidence presented; (k) conducting three successful bellwether trials,[2] two of which were completed before any other trials in the country began, as well as the state court trial of *Schafer v. Bayer CropScience LP*, CV-06-423, in the Circuit Court of Lonoke County, Arkansas ("*Schafer*"); (l) defending the appeals of all bellwether trial verdicts before the 8th Circuit Court of Appeals and defending the appeal of the plaintiffs' verdict in the *Schafer* case before the Arkansas Supreme Court; (m) organizing, directing and participating in mediation proceedings

---

[2] The fourth bellwether trial settled prior to its conclusion.

before Judge Limbaugh and John Perry, conducting numerous teleconferences, and sending numerous e-mails and other correspondence keeping plaintiffs' counsel (including Defendant) advised of the status of settlement discussions; and (n) leading the settlement discussions which resulted in the Global Producer Settlement[3] announced on July 1, 2011.

16. The common benefit services, materials and/or related expense items provided or paid for by Class members have benefited all claimants in both the federal and state cases – including the Defendant here.

***The Common Benefit Order***

17. In light of their efforts, which facilitated the streamlined and efficient prosecution of all cases against Bayer for the benefit of all claimants – including Defendant – in August 2009, the Leadership Group filed a motion to establish a Common Benefit Fund to compensate those attorneys working with Court-appointed Co-Lead Counsel to benefit all persons or entities that suffered loss as a result of the LLRICE Contamination, including plaintiffs with cases pending in state court (the "Common Benefit Attorneys"). The motion entailed substantial briefing, as well as comprehensive and heated opposition from various parties (*See e.g.*, Rice MDL Dkt Nos. 1458-1460, 1522, 1525, 1527, 1585-1586), which did not, however, include Defendant, which did not then object to the Leadership Group's motion.

18. On February 24, 2010 the Court entered its Common Benefit Order, granting, in large part, the Leadership Group's motion.

---

[3] The Global Producer Settlement is comprised of two separate settlements, which together, provide $750 million to resolve rice producers' claims arising out of the LLRICE Contamination. The "MDL Settlement" was entered into by and among Bayer and the following attorneys: Don Downing, Adam Levitt, Richard Arsenault, Bill Chaney, and Scott Powell. The MDL Settlement covers all claimants who had cases pending in the Rice MDL, as well as all other claimants who agreed to be bound by the terms of the MDL Settlement. The second settlement, the "GMB Settlement," was entered into by and among Bayer and the following attorneys: defendant Martin J. Phipps, defendant Mikal C. Watts, Chuck Banks and Steve Murray (collectively, the "GMB Counsel"). The GMB Settlement covers GMB Counsel's clients who were outside of the Rice MDL.

19. Specifically, the Court ordered that Bayer "shall hold back and set aside for placement into Lead Counsel's common benefit trust fund, the following amounts related to each federal genetically modified rice case and related to each state case where either the parties agree, or the State Court having jurisdiction orders: (i) 8% of any gross recovery obtained by producer plaintiffs by way of judgment, settlement or otherwise, for attorneys' fees; (ii) 7% of any gross recovery obtained by non-producer plaintiffs, except for the ENPs [European non-producers], by way of judgment, settlement, or otherwise, for attorneys' fees; (iii) 6% of any gross recovery obtained by European non-producer plaintiffs, except for Rickmers, by way of judgment, settlement, or otherwise, for attorneys' fees; and (iv) an additional 3% of any gross recovery obtained by any plaintiff, by way of judgment, settlement, or otherwise for common benefit costs and expenses incurred by attorneys providing a common benefit."

20. In its Common Benefit Order, the Court reluctantly concluded that it lacked jurisdiction to extend the provisions of that Order to state court litigants, but noted that these parties would be unjustly enriched should they refuse to voluntarily pay into the common benefit fund, stating:

> I urge the parties to consider the unjust enrichment issues [implicated by state court plaintiffs and their counsel benefitting from the common benefit information from the Rice MDL in their state court actions] in their settlement negotiations, and I urge the state court judges handling the cases to consider requiring participation in the fund by the parties over whom they have jurisdiction.

Rice MDL Dkt No. 2574 at 2.

21. As a result of the Court's finding that it lacked jurisdiction to extend the Common Benefit Order to state court litigants, Defendant was able to avoid contributing to the Common Benefit Fund in regard to its claims outside of the Rice MDL. Defendant did so despite the fact that Class members conferred substantial benefits on Defendant by providing it with the common

8

benefit services, materials and/or related expense items, which Defendant accepted and benefitted from in pursuit of claims outside of the Rice MDL.

***The Benefits Conferred on Defendant by Class Members***

22. Defendant had cases in both the Rice MDL and in state court and as a result, had access to the common benefit services, materials and/or related expense items provided or paid for by members of the Class. Defendant benefitted from its acceptance of these common benefit services and materials, with respect to its claims both within and without the Rice MDL.

23. In its Common Benefit Order, the Court recognized the extensive benefits reaped from the Class by both producers and non-producers not only in the Rice MDL but the related state-court cases. *See* Common Benefit Order at 2, 4-5, 12-14 (Rice MDL Dkt No. 2574).

24. The Court found, in relevant part, that:

> it is abundantly clear that the plaintiffs in the related state court cases have derived substantial benefit from the work of the leadership counsel in these federal cases. In fact, most of the lawyers representing plaintiffs in state court cases have agreed to join the [common benefit] trust. ***The lawyers and plaintiffs who have not agreed to join in the trust will have been unjustly enriched if they are not required to contribute to the fees of the leadership group.*** But I do not have jurisdiction to order the hold-back for those states court cases . . . I urge the parties to consider the unjust enrichment issues in their settlement negotiations and I urge the state court judges handling the cases to consider requiring participation in the fund by the parties over whom they have jurisdiction.

*Id..* at 2 (emphasis added).

The Court further found:

> For almost three years, the leadership group has coordinated pre-trial preparations for all plaintiffs in this litigation with claims against the Bayer defendants. In an early Case Management Order [ ], I ruled that depositions taken in the MDL could be cross-noticed with state cases and could be used in the state suits to the extent allowed by the applicable state courts. The leadership group, along with other plaintiffs' counsel working with it, has prepared for and conducted several hundred depositions, has requested discovery, appears before the court regularly at hearings and conferences, prepares and opposes motions, selects and prepares experts, and negotiates with defendants on procedural and substantive issues related to the litigation.

9

> The leadership group shares the products of its labor with all of the plaintiffs. All depositions and other discovery responses from the Bayer defendants have been made available to all the plaintiffs in all the cases, state and federal. The leadership group made available to state counsel the massive document production that it received from the Bayer defendants.

*Id.* at 4-5.

\* \* \* \*

> As set out above, the leadership group's work in discovery, motion practice, and the bellwether trials has provided a foundation for all of the cases involved in the litigation. Evidence about what Bayer did in developing and distributing the genetically modified rice is central to the proof on all the claims in this litigation. This evidence was exclusively within Bayer's control, and the only realistic way for the evidence to be developed was through the type of centralized discovery that the leadership group conducted. It would not have been possible for thousands of plaintiffs to separately obtain discovery from Bayer, and that, of course, is part of the reason the cases were combined in this MDL. In addition to coordinating and conducting all discovery against Bayer, the leadership lawyers have conducted two bellwether trials. Those trials essentially provided a preview for all other plaintiffs of the trial testimony they might expect from the Bayer witnesses and the types of cross-examination that their witnesses and clients might expect at trial from Bayer's counsel. The trial preview, when combined with the discovery, is a great benefit for **all plaintiffs, whether they are producers, non-producers, or ENPs.**
>
> . . . Plaintiffs are substantially benefitted by 'the mere availability' of relevant discovery, even if an objecting plaintiff chooses not use it. In this case, of course, the objectors have actually used the leadership group's materials.

*Id.* at 12-14 (citation omitted) (emphasis added).

25. Defendant accepted the common benefit services, materials and related expense items provided or paid for by the Class, in its state court cases for, among other things, its own discovery, motions, responses, testimony, exhibits, cross-examination, arguments, and strategy. As the Court held, all parties, whether producer or non-producers, including Defendant, received a substantial benefit from the common benefit work.

26. Among other things, counsel for Riceland attended at least portions of the MDL bellwether trials, receiving invaluable insight on witnesses, evidence, and argument.

10

27. Riceland also had the benefit of the deposition discovery, and documents produced by Bayer, in the Rice MDL as well as the legal research, arguments, motions, responses, pre-trial, trial, and post-trial work performed or paid for by the Class, for use in in the *Meins* case. Bayer raised many of the same arguments in *Meins* as it had in the MDL proceedings, which Riceland opposed by borrowing freely (sometimes virtually verbatim) from briefs filed in the MDL and citing the MDL rulings. These included, among others, Bayer's motion for express preemption under the Plant Protection Act and motion for summary judgment based on the economic loss doctrine. Riceland also advanced numerous arguments based on work in the MDL including its motion for summary judgment on Bayer's affirmative defense based on preemption, motion for partial summary judgment on the agency of Bayer's Liberty Link rice cooperators, motion for summary judgment on Bayer's affirmative defense of compliance with applicable statutes and regulations, motion for partial summary judgment on successor liability of Bayer entities, motion in limine to exclude testimony of Bayer's experts, motion in limine to exclude portions of the USDA report pertaining to the genetically modified rice contamination, and motion in limine regarding adventitious presence.

28. Riceland also used numerous exhibits and the testimony of numerous key witnesses from the MDL to support liability against Bayer, as well as Riceland's claim for punitive damages, in the *Meins* case.

29. In addition, prior to the *Meins* trial, the case captioned *Schafer v. Bayer CropScience, LP*, CV-06-423, went to trial in the Circuit Court of Lonoke County, Arkansas. This case resulted in a plaintiffs' verdict for compensatory damages as well as punitive damages in the amount of $42,000,000. This verdict was upheld on appeal by the Arkansas Supreme Court, which held Arkansas' punitive damages cap unconstitutional. Riceland benefitted by the common benefit work which produced this verdict and ruling as well.

11

30. Riceland also had the use of these services and other items provided or paid for by the Class in defending itself against claims made against it in at least one other state court case involving the genetically modified rice contamination.

31. On February 11, 2011, the Court addressed the Leadership Group's motion to compel Riceland to contribute to the trust a portion of any recovery received in the state-court *Meins* case. As the Court observed, "Riceland is a defendant in the Arkansas case with cross-claims against Bayer, although Riceland's claims against Bayer in its MDL case are essentially the same as the claims it asserts against Bayer in its Arkansas case." Memorandum and Order (Rice MDL Dkt No. 4033) at 1-2.

32. The Court found that it lacked jurisdiction to compel Riceland to contribute a portion of its state-court recovery, but also found that its ruling "creates a risk that Riceland will be unjustly enriched," stating further: "In the original common benefit order, I found that Riceland had received a substantial benefit from the leadership group's work. Riceland did not object to this conclusion at the time and it remains my opinion that Riceland has, in fact, received a substantial benefit from the leadership group's work in this MDL. Despite this, Riceland refuses to voluntarily agree to contribute to the fund." *Id.* at 2-3.

33. On September 4, 2012, Plaintiffs filed a motion for allocation and distribution of common benefit fees and expenses in the Rice MDL. On December 6, 2012, after exhaustive briefing on the issues, the Court issued an Order Adopting the Report and Recommendation of the Special Master for the Allocation and Distribution of Common Benefit Fees and Expenses (the "Allocation and Distribution Order") (Rice MDL Dkt No. 4935) granting Plaintiffs' motion and ordering that the Common Benefit Attorneys' fees and expenses be paid from the fund. The Court further ordered that six designated firms were entitled to any additional funds they received up to $72 million and "if the total common benefit fund amounts received exceeds $72

million, plaintiffs' co-lead counsel shall approach the Court with a recommendation as to the allocation of those additional funds."

34. Among other things, the Court found all state-court cases "benefitted greatly from the work performed by the common benefit attorneys." Rice MDL Dkt No. 4935 at 3-4.

## V. CLASS ACTION ALLEGATIONS

35. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure ("Rules" or, individually, "Rule"), individually and on behalf of all persons and entities that provided or paid for common benefit services, materials, and/or related expense items (the "Class"). Excluded from the Class is Defendant.

36. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The requirements of Rule 23(a) are satisfied because Class members are sufficiently numerous and geographically dispersed so as to make joinder of all members of the Class impracticable. There are thousands of Class members dispersed throughout the country. The "numerosity" requirement of Rule 23(a)(1) is, therefore, satisfied.

37. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual members of the Class. Among those common questions of law or fact pertaining to the Unjust Enrichment claim are:

 (a) whether the common benefit services, materials and/or related expense items provided and paid for by Class members conferred a benefit on Defendant;

 (b) whether Defendant accepted the benefits provided;

 (c) whether the Defendant accepted the benefits provided under circumstances that would make retention without payment unjust.

Similarly, among those common questions of law or fact pertaining to the Quantum Meruit claim are:

13

  (a)  whether Class members furnished goods or services to Defendant; and

  (b)  whether Defendant accepted such goods or services.

38. **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the claims of the other Class members because they arise from the same course of conduct by Defendant and are based on the same legal theories – as do the claims of all other Class members. Accordingly, Plaintiffs have satisfied the "typicality" requirements of Rule 23(a)(3) with respect to the Class they seek to represent.

39. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the other Class members relating to the claims set forth herein. In addition, proposed class counsel has the capability and expertise to prosecute these claims on behalf of all Class members. In fact, proposed class counsel has litigated the related Rice MDL action on behalf of all plaintiffs suing Bayer as a result of the LLRICE Contamination.

40. **Avoidance of Inconsistent Rulings or Incompatible Standards of Conduct for Defendants – Federal Rule of Civil Procedure 23(b)(1).**  In addition, this action meets the requirements of Rule 23(b)(1). Prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. Similarly, adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of other members who are not parties to the individual adjudications or would substantially impede their ability to protect their interests,

41. **Federal Rule of Civil Procedure 23(b)(2).** This action also meets the requirements of Rule 23(b)(2), in that Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Class, thereby making final injunctive relief with respect to the Class appropriate.

42. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is the superior method for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment will permit a sufficiently numerous group of similarly-situated persons and/or entities to prosecute their respective claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce. Furthermore, while damages to members of the proposed Class are substantial in the aggregate, the damages to any individual member of the proposed Class may be insufficient to justify individually controlling the prosecution of separate actions against Defendant. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the claims asserted by Plaintiffs individually and on behalf of the other members of the Class, class treatment of this litigation will ensure that all claims and claimants are before this Court for consistent adjudication thereof and will be easily managed by the Court and the parties to this action.

## VI. CLAIMS ALLEGED

### COUNT I
### UNJUST ENRICHMENT
#### (On Behalf of Plaintiffs and the Class)

43. Plaintiffs incorporate the allegations set forth in paragraphs 1-42 as if fully set forth herein.

44. As a result of the common benefit services, materials and/or related expense items provided or paid for by the Class and as described above, the Class conferred a benefit on Defendant, who received, appreciated and accepted such benefit.

45. It would be unjust to allow Defendant to retain this benefit at the Class's expense.

46. Indeed, the Court has already found that Defendant has received a benefit and been unjustly enriched thereby. Defendant is bound by those findings and/or estopped from contending to the contrary.

47. As a result of Defendant's unjust enrichment, Plaintiffs and the other members of the Class are entitled to restitution from Defendant in an amount equal to 10% of the gross recovery against Bayer (whether by judgment, settlement, or otherwise) in any of its state-court cases.

### COUNT II
### QUANTUM MERUIT
#### (On Behalf of Plaintiffs and the Class)

48. Plaintiffs incorporate the allegations set forth in paragraphs 1-47 as if fully set forth herein.

49. In addition, or in the alternative to Count I, Plaintiffs assert this claim for Quantum Meruit on behalf of themselves and the Class.

50. As the Court already found, the Class provided a significant amount of common benefit services, materials and/or related expense items to all parties who brought claims against Bayer arising out of the LLRICE Contamination, including Defendant.

51. Defendant accepted these common benefit services, materials and/or related expense items and benefitted from them in all of its cases both in and outside of the Rice MDL.

52. As a result of Defendant's acceptance of the Class's common benefit services, materials and related expense items, the Class is entitled to restitution in an amount equal to 10% of Defendant's gross recovery against Bayer (whether by judgment, settlement or otherwise) in any related state court case.

### VII. REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the Class respectfully request judgment as follows:

1. Ordering restitution, and specifically requiring Defendant to return the monies unjustly retained by it, in the amount of 10% of the gross recovery against Bayer (whether by judgment, settlement or otherwise), in any related state-court case; and,

2. Pre-judgment and post-judgment interest at the maximum rates permitted by law; and

3. For such other equitable relief as this Court deems just and proper.

Dated: February 20, 2013

**GRAY, RITTER & GRAHAM, P.C.**

By: /s/ Don M. Downing
Don M. Downing, Bar #30405MO
Gretchen Garrison, Bar #33963MO
Jason Sapp, Bar #58511MO
701 Market Street, Suite 800

St. Louis, Missouri 63101
Tel: (314) 241-5620
Fax: (314) 241-4140
ddowning@grgpc.com
ggarrison@grgpc.com
jsapp@grgpc.com

**GRANT & EISENHOFER P.A.**

By: /s/ Adam J. Levitt
Adam J. Levitt
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
Tel: (312) 214-0000
Fax: (312) 214-0001
alevitt@gelaw.com

Stacey Kelly Breen
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
270 Madison Avenue, 10th Floor
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 545-4653

Richard J. Arsenault
Jennifer Hoekstra
**NEBLETT BEARD & ARSENAULT, LLP**
2220 Bonaventure Court, P.O. Box 1190
Alexandria, Louisiana 71301
Tel: (800) 256-1050
Fax: (318) 561-2591

William Chaney
James L. Reed
William J. French
Michael Kelsheimer
Drew York
**LOOPER REED & MCGRAW**
1601 Elm Street, Suite 4100
Dallas, Texas 75201
Tel: (214) 237-6403
Fax: (214) 953-1332

Scott A. Powell
**HARE WYNN NEWELL & NEWTON**
2025 3rd Avenue North

Suite 800
Birmingham, Alabama  35203
Tel:  (800) 568-5330
Fax:  (205) 324-2165

Grant L. Davis
Shawn Foster
**DAVIS BETHUNE & JONES**
City Center Square
1100 Main Street, Suite 2930
Kansas City, Missouri  64105
Tel:  (816) 421-1600
Fax:  (816) 472-5973