UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DON M. DOWNING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:13-CV-00321-CDP |
| v. | ) | |
| | ) | |
| RICELAND FOODS, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**DEFENDANT RICELAND FOODS, INC.'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CLASS ACTION COMPLAINT**

COMES NOW Defendant Riceland Foods, Inc. ("Riceland"), and for its Amended Answer to Plaintiffs' Class Action Complaint ("Complaint"), states as follows:

## I.    NATURE OF THE ACTION

1.    Riceland admits only that Plaintiffs seek to recover against Riceland for alleged unjust enrichment and quantum meruit, but Riceland denies that Plaintiffs and the putative class are entitled to any relief whatsoever, denies that this case is appropriate for class certification, and denies that Riceland received any benefit from the alleged common benefit services. Riceland denies all remaining allegations contained in paragraph 1.

## II.    JURISDICTION AND VENUE

2.    Riceland denies all allegations contained in paragraph 2.

3.    The allegations in this paragraph constitute legal conclusions to which no response is required. To the extent a response is deemed to be required, Riceland denies all allegations contained in paragraph 3.

4.    Riceland denies all allegations contained in paragraph 4.

### III.   **PARTIES**

*Named Plaintiffs*

5.     Riceland admits that Mr. Downing is and/or was a member of the Court-appointed Plaintiffs' Leadership Group in the case styled *In re Genetically Modified Rice Litigation*, Case No. 4:06MD1811(CDP) (the "MDL"), and further admits that Mr. Downing is a citizen of Missouri, but Riceland is without sufficient information to form a belief as to the truth of the remaining allegations contained in paragraph 5 and, therefore, denies said allegations.

6.     Riceland admits that Mr. Levitt is and/or was a member of the Court-appointed Plaintiffs' Leadership Group in the MDL, and further admits that Mr. Levitt is a citizen of Illinois, but Riceland is without sufficient information to form a belief as to the truth of the remaining allegations contained in paragraph 6 and, therefore, denies said allegations.

*Defendant*

7.     Riceland admits the allegations contained in paragraph 7.

8.     Riceland admits that it was named as a defendant in certain cases that were consolidated into and previously pending in the MDL, including cases filed by members of the MDL Plaintiffs' Leadership Group. Riceland further admits that it asserted certain claims against various Bayer entities in certain cases that were consolidated into and previously pending in the MDL, but states that such cases were dismissed and/or mooted. Riceland further admits that it filed certain pleadings in those MDL cases and its counsel made certain appearances in those MDL cases, all of which are of public record, and the public record is the best evidence thereof. Riceland further states that none of the MDL cases in which Riceland was as a party (whether as a defendant, cross-claimant, third-party plaintiff, or otherwise) was originally filed in a Court located in the State of Missouri; rather, those cases were transferred into the MDL by the JPML

which does not and cannot create personal jurisdiction over Riceland sufficient to support the present action. Except as expressly admitted herein, Riceland denies the allegations contained in paragraph 8.

## IV.    SUBSTANTIVE ALLEGATIONS

### *The Rice MDL and Related Actions*

9.     Riceland admits the allegations contained in paragraph 9.

10.    Riceland admits the allegations contained in paragraph 10, but denies that Riceland obtained any relief from Bayer in any MDL case.  Further answering, Riceland states that none of the cases in which Riceland filed claims against Bayer were originally filed in the State of Missouri; transfer by the JPML of federal court cases filed in Arkansas into the MDL cannot create personal jurisdiction over Riceland sufficient to support the present action.

11.    Riceland admits the allegations contained in paragraph 11.

12.    Riceland admits that the Court appointed certain attorneys as Plaintiffs' Lead Counsel but states that such appointment was done in an Order that speaks for itself and is the best evidence of its contents.  Riceland denies the allegations of paragraph 12 to the extent they are inconsistent with the terms of the Order.

13.    Riceland admits that the Court appointed certain attorneys as Plaintiffs' Lead Counsel but states that such appointment was done in an Order that speaks for itself and is the best evidence of its contents.  Riceland denies the allegations of paragraph 13, and all sub-parts thereof, to the extent they are inconsistent with the terms of the Order.  Riceland further denies that the Order creates any liability on the part of Riceland or entitles Plaintiffs and the putative class to any relief whatsoever.

14.    Riceland denies all allegations contained in paragraph 14.

15.     Riceland admits that the attorneys listed in the footnote to paragraph 15 of the Complaint, among others, entered into Settlement Agreements with Bayer, but states that the terms of those Settlement Agreements speak for themselves and are the best evidence of their contents.  Riceland denies the allegations in the footnote to paragraph 15 to the extent that they are inconsistent with the terms of those Settlement Agreements.  Riceland denies that the actions alleged in the body of paragraph 15 of the Complaint constituted a benefit to Riceland and therefore denies all remaining allegations contained in paragraph 15, including all sub-parts thereof.  Further answering, Riceland states that, far from constituting a "benefit," the *Schafer* case referenced in paragraph 15 was instituted and aggressively prosecuted against Riceland, causing Riceland to incur significant defense costs and attorneys' fees. Except as expressly admitted herein, Riceland denies all allegations contained in paragraph 15 and the footnote to paragraph 15.

16.     Riceland denies all allegations contained in paragraph 16.

### *The Common Benefit Order*

17.     Riceland admits only that certain attorneys filed a motion as described but denies all remaining allegations of paragraph 17.

18.     Riceland admits that the Court entered a Common Benefit Order, but states that the Order speaks for itself and is the best evidence of its contents. Riceland denies the allegations of paragraph 18 to the extent they are inconsistent with the terms of the Order.

19.     Riceland admits that the Court entered a Common Benefit Order, but states that the Order speaks for itself and is the best evidence of its contents. Riceland denies the allegations of paragraph 19 to the extent they are inconsistent with the terms of the Order.

20.     Riceland admits that the Court entered a Common Benefit Order and that the Court stated it lacked jurisdiction to compel state court plaintiffs to contribute to the common benefit fund.  Riceland further states that the Order speaks for itself and is the best evidence of its contents. Denies all allegations contained in paragraph 20 not expressly admitted herein.

21.     Riceland admits that the Court entered a Common Benefit Order, but states that the Order speaks for itself and is the best evidence of its contents.  Riceland denies the allegations of paragraph 21 to the extent they are inconsistent with the terms of the Order. Further answering, Riceland expressly denies that Plaintiffs or the putative class conferred a benefit—substantial or otherwise—on Riceland that in any way contributed to Riceland's successful prosecution of Riceland's claims against Bayer in Arkansas state court.  Riceland denies all remaining allegations in paragraph 21 not expressly admitted herein.

### The Benefits Conferred on Defendant by Class Members

22.     Riceland denies all allegations contained in paragraph 22.

23.     Riceland admits that the Court entered a Common Benefit Order, but states that the Order speaks for itself and is the best evidence of its contents.  Riceland denies any contention that the Order creates any liability on the part of Riceland or otherwise has any preclusive effect against Riceland.  Riceland denies all remaining allegations in paragraph 23 not expressly admitted herein.

24.     Riceland admits that the Court entered a Common Benefit Order, but states that the Order speaks for itself and is the best evidence of its contents.  Riceland denies the allegations of paragraph 24 to the extent they are inconsistent with the terms of the Order.  Riceland denies any contention that the Order creates any liability on the part of Riceland or

otherwise has any preclusive effect against Riceland.  Riceland denies all remaining allegations in paragraph 24 not expressly admitted herein.

25.     Riceland denies all allegations contained in the first sentence of paragraph 25. Pleading to the allegations contained in the second sentence of paragraph 25, the MDL Court's prior Orders speak for themselves, and Riceland denies the allegations contained in this sentence to the extent that Plaintiffs' allegations are inconsistent with the Order, and Riceland expressly denies that any prior ruling by the MDL Court conclusively establishes any factual or legal issue related to Plaintiffs' claims against Riceland in this case or otherwise has any preclusive effect against Riceland. Riceland denies all remaining allegations in paragraph 25 not expressly admitted herein.

26.     Riceland admits that its counsel observed certain portions of legal proceedings in the MDL bellwether trials, which were public proceedings held in open court, but Riceland denies all remaining allegations contained in paragraph 26.

27.     Riceland admits that Bayer raised certain arguments and defenses in the MDL that it also raised, at least in part, in the *Meins* case. Riceland further admits that certain rulings by the MDL Court, which were publically published decisions, were cited by one or more of the parties in certain briefing in the *Meins* case. Riceland denies that it received a benefit from the actions alleged in paragraph 27 that would create any liability on the part of Riceland for unjust enrichment, quantum meruit, or any other legal or equitable claim whatsoever or that would entitle Plaintiffs to the relief requested in their Complaint or any relief whatsoever.  Riceland denies all remaining allegations contained in paragraph 27.

28.     Riceland admits that certain portions of testimony of certain witnesses, whose depositions were taken or cross-noticed in the MDL and which Riceland's counsel attended and

participated in, were presented in the *Meins* case – the majority of which consisted of questioning Riceland's counsel conducted during said depositions in order to support Riceland's claims and defenses. Riceland denies all remaining allegations contained in paragraph 28.

29.     Riceland admits that a trial was held in the case of *Schafer v. BayerCropscience*. Further answering, Riceland states that the proceedings of that litigation are a matter of public record which speaks for itself and is the best evidence of the events occurring therein.  Riceland specifically denies the allegation that Riceland benefitted from any "common benefit work" as alleged in paragraph 29. Riceland further states that, far from constituting a "benefit," the *Schafer* case was instituted and aggressively prosecuted against Riceland, causing Riceland to incur significant defense costs and attorneys' fees.  Riceland denies all allegations contained in paragraph 29 not expressly admitted herein.

30.     Riceland denies all allegations contained in paragraph 30.

31.     Riceland admits that the Court entered a Memorandum and Order, but states that the Order speaks for itself and is the best evidence of its contents.  Riceland denies all remaining allegations in paragraph 31 not expressly admitted herein.

32.     Riceland admits that the Court entered a Memorandum and Order, but states that the Order speaks for itself and is the best evidence of its contents.  Riceland admits the Court ruled that it did not have jurisdiction to hear the Plaintiff Leadership Group's claims against Riceland related to Riceland's state court litigation.  Riceland denies that the Court's Order conclusively establishes in Plaintiffs' favor any factual or legal issues related to Plaintiffs' claims against Riceland in this case or otherwise has any preclusive effect against Riceland.  Answering further, Riceland specifically denies that it was unjustly enriched or received a substantial benefit

by work performed by Plaintiffs or the putative class and denies all remaining allegations in paragraph 32.  Denies all allegations contained in paragraph 32 not expressly admitted herein.

33.     Riceland admits that the Court entered an Order Adopting the Report and Recommendation of the Special Master for the Allocation and Distribution of Common Benefit Fees and Expenses ("Order"), but states that the Order speaks for itself and is the best evidence of its contents. Riceland denies the allegations of paragraph 33 to the extent they are inconsistent with the terms of the Order.  Denies all allegations contained in paragraph 33 not expressly admitted herein.

34.     Riceland admits that the Court entered an Order Adopting the Report and Recommendation of the Special Master for the Allocation and Distribution of Common Benefit Fees and Expenses ("Order"), but states that the Order speaks for itself and is the best evidence of its contents.  Further answering, Riceland denies that it benefitted from the work of Plaintiffs or the putative class.  Riceland denies that the Order has any preclusive effect against Riceland – whether characterized as res judicata, collateral estoppel, or otherwise – as the Court admittedly had no jurisdiction over the Plaintiff Leadership Group's claims against Riceland related to Riceland's state court litigation.  Riceland denies all allegations in paragraph 34 not expressly admitted herein.

## V.     CLASS ACTION ALLEGATIONS

35.     Riceland admits that Plaintiffs attempt to bring this lawsuit as a class action but deny that Plaintiffs satisfy the requirements of Rule 23.   Riceland denies all remaining allegations of paragraph 35.

36.     Riceland denies all allegations contained in paragraph 36.

37.     Riceland denies all allegations contained in paragraph 37, including all sub-parts thereof.

38.     Riceland denies all allegations contained in paragraph 38.

39.     Riceland denies all allegations contained in paragraph 39.

40.     Riceland denies all allegations contained in paragraph 40.

41.     Riceland denies all allegations contained in paragraph 41.

42.     Riceland denies all allegations contained in paragraph 42.

## VI.   CLAIMS ALLEGED

### COUNT I
### UNJUST ENRICHMENT
**(On Behalf of Plaintiffs and the Class)**

43.     Riceland incorporates its Answers to paragraph 1-42 as if fully set forth herein.

44.     Riceland denies all allegations contained in paragraph 44.

45.     Riceland denies all allegations contained in paragraph 45.

46.     Riceland denies all allegations contained in paragraph 46.

47.     Riceland denies all allegations contained in paragraph 47.

### COUNT II
### QUANTUM MERUIT
**(On Behalf of Plaintiffs and the Class)**

48.     Riceland incorporates its answers to paragraph 1-47 as if fully set forth herein.

49.     Riceland admits only that Plaintiffs attempt to state a claim for quantum meruit, but denies all remaining allegations contained in paragraph 49.

50.     Riceland denies all allegations contained in paragraph 50.

51.     Riceland denies all allegations contained in paragraph 51.

52.     Riceland denies all allegations contained in paragraph 52.

53.     Defendant Riceland Foods, Inc. denies that Plaintiffs are entitled to the relief sought in the wherefore or *ad damnum* clauses in the Complaint and further denies Plaintiffs and the putative class are entitled to any relief whatsoever from Riceland.

## DEFENSES AND AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiffs and the putative class have fully settled, released, and compromised all claims against Riceland, including but not limited to the claims asserted in the Complaint, and, as such, there is no case or controversy sufficient to satisfy Article III of the United States Constitution. This Court therefore lacks subject matter jurisdiction over this lawsuit.

### SECOND DEFENSE

Plaintiffs have improperly invoked jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) because, among other reasons, there are not more than 100 members of the putative class.  Additionally, this Court lacks diversity jurisdiction.

### THIRD DEFENSE

The claims of Plaintiff and the putative class are barred in their entirety by prior payment. The Plaintiffs' Leadership Group and the attorneys in the putative class have already been paid for the services rendered and fees incurred at a rate equivalent to, or greater than in some instances, the reasonable actual cost and value of those services and fees.  Upon information and belief, the Plaintiffs and the attorneys in the putative class have already been paid a contingency fee of 33.33 % of the gross recovery of their clients; additionally, they have also received more than $50 million in payments from the Common Benefit Trust Fund to reimburse them for

services provided and fees expended.  These payments constitute an absolute bar to any claims for unjust enrichment, quantum meruit, or implied in fact or implied in law contract.

## FOURTH DEFENSE

Any recovery by Plaintiffs and the putative class must be reduced or offset by amounts already received, or that will be received, from others for the same alleged injuries claimed in this lawsuit, including but not limited to payments from collateral sources.  Plaintiffs and the putative class are not entitled to a double recovery for the same alleged injury.

## FIFTH DEFENSE

Plaintiffs' claims and those of the putative class are barred to the extent they have released, waived, settled, and/or compromised those claims.

## SIXTH DEFENSE

Plaintiffs' claims and those of the putative class are barred to the extent that they have entered into an accord and satisfaction with Bayer, Riceland, or other persons.

## SEVENTH DEFENSE

Plaintiffs and the putative class lack standing to assert the claims set forth in their Complaint because, among other reasons, they have fully released their claims against Riceland.

## EIGHTH DEFENSE

Plaintiffs and the putative class lack standing to assert claims of the common benefit trust because they are no longer the trustees thereof.

## NINTH DEFENSE

Plaintiffs and the putative class lack standing to assert claims of the common benefit trust because the property or claims at issue are not trust property.

## TENTH DEFENSE

The named Plaintiffs have no standing to bring a class action complaint because settled law prohibits them from acting as both class counsel and a named class representative.  Here, both proposed class representatives, Mr. Downing and Mr. Levitt, purport to act as class counsel for the putative class and have signed the Complaint as attorneys.  Mr. Downing and Mr. Levitt, and their respective law firms, must be disqualified from acting as class counsel in this case.  The same would be true for all members of the Plaintiffs' Leadership Group and their respective firms; they cannot properly act as both class counsel and members of the putative class.

## ELEVENTH DEFENSE

Plaintiffs and the putative class lack standing to assert the claims at issue and possess no cognizable claims because Plaintiffs have no agreement or contract (express or implied) or attorney-client relationship with Riceland which would create a right to sue Riceland for the relief sought herein.

## TWELVETH DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by they statute of frauds.

## THIRTEENTH DEFENSE

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by res judicata, collateral estoppel, waiver, settlement agreements from prior litigation, and/or other prior rulings with preclusive effect upon this litigation.

## FOURTEENTH DEFENSE

Plaintiffs and the putative class have failed to mitigate their alleged damages.

<u>FIFTEENTH DEFENSE</u>

Plaintiffs cannot satisfy the requirements of Federal Rule of Civil Procedure 23 necessary to achieve class certification.

<u>SIXTEENTH DEFENSE</u>

Plaintiffs' claims should be dismissed for the failure to name necessary and indispensable parties.

<u>SEVENTEENTH DEFENSE</u>

Venue in this jurisdiction is improper.

<u>EIGHTEENTH DEFENSE</u>

Plaintiffs fail to state claims upon which relief can be granted.

<u>NINETEENTH DEFENSE</u>

Plaintiffs and the putative class have not conferred any benefit on Riceland that would support a claim for unjust enrichment, quantum meruit, or any other claim.  Regardless, any alleged benefit, which Riceland denies, has been greatly outweighed by: (a) the detriment and harassment caused to Riceland by Plaintiffs and the putative class; and/or (b) the substantial benefit Riceland conferred on the Plaintiffs and the putative class.  Therefore, Plaintiffs' claims and those of the putative class against Riceland are barred.

<u>TWENTIETH  DEFENSE</u>

Plaintiffs' claims and those of the putative class are barred by equitable principles including but not limited to the doctrines of estoppel, laches, and unclean hands.

<u>TWENTY-FIRST DEFENSE</u>

Plaintiffs' claims and those of the putative class are barred in whole or in part by the applicable statute of limitations and/or statute of repose.

<u>TWENTY-SECOND DEFENSE</u>

Plaintiffs' claims and those of the putative class are subject to setoff and recoupment because the prior litigation instituted by Plaintiffs and/or the putative class against Riceland has damaged Riceland thereby precluding any recovery and/or reducing any recovery sought by Plaintiffs herein.

<u>TWENTY-THIRD DEFENSE</u>

Plaintiffs and members of the putative class have breached their settlement agreements by instituting this litigation against Riceland, because they expressly agreed to release all claims against Riceland, including but not limited to the claims alleged in their Complaint.  As a result, Riceland has been damaged and is entitled to a recovery of attorneys' fees, expenses, and other damages flowing from Plaintiffs' breach; Riceland is also entitled to injunctive relief against the Plaintiffs and putative class to enjoin this breach according to the express terms of the settlement agreement.

<u>TWENTY-FOURTH DEFENSE</u>

Plaintiffs and the putative class lack standing and do not possess a private right of action to attempt to prosecute the Court's Common Benefit Order as alleged in the Complaint.

<u>TWENTY-FIFTH DEFENSE</u>

The prior orders of the Court cited by Plaintiffs in their Complaint do not have preclusive effect on Riceland because, among other reasons, the orders stated that the Court did not have jurisdiction over the state court litigation or litigants at issue. Furthermore, precluding Riceland from litigating the facts and claims alleged in Plaintiffs' Complaint would violate Due Process, the Right to Trial by Jury, and other Constitutional rights of Riceland.

<u>TWENTY-SIXTH DEFENSE</u>

Plaintiffs' claims and those of the putative class are barred because this is an untimely and improper collateral attack on prior Orders of the MDL Court finding that it had no jurisdiction to enforce its Common Benefit Order against Riceland related to any recovery obtained by Riceland in its state-court litigation.

<u>TWENTY-SEVENTH DEFENSE</u>

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because any services allegedly provided were performed, if at all, on a voluntary basis, were unnecessary, and were unsolicited by Riceland.

<u>TWENTY-EIGHTH DEFENSE</u>

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent they seek or would constitute an impermissible or unconstitutional taking under the U.S. Constitution or applicable state law.  Also, Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent they violate the Contracts Clause of the U.S. Constitution.

Riceland expressly reserves the right to raise additional claims, defenses or affirmative defenses as may be established during discovery and by the evidence in this case.

Riceland demands a trial by jury on the claims alleged in the Complaint and all Riceland's defenses to the fullest extent allowed by law.

WHEREFORE, having fully answered, Defendant Riceland Foods, Inc. respectfully requests that the Court dismiss Plaintiffs' Class Action Complaint with prejudice, award Defendant its costs, expenses, and attorneys' fees incurred herein, and grant Defendant any further relief the Court deems just and proper.

## COUNTERCLAIM

COMES NOW Defendant/Counterclaim Plaintiff Riceland Foods, Inc. ("Riceland") and asserts the following counterclaim (the "Counterclaim") against Plaintiffs/Counterclaim Defendants Don Downing and Adam Levitt (collectively, "Counterclaim Defendants"). Riceland asserts this Counterclaim in the alternative, and without waiver of Riceland's defense that this Court does not possess subject matter jurisdiction over this action. Riceland asserts this Counterclaim out of an abundance of caution in the event that this Court determines it possesses and should exercise jurisdiction over this action.

## PARTIES

1.      Riceland is a farmer-owned agricultural cooperative organized under the laws of the State of Arkansas with its principal place of business in Stuttgart, Arkansas.

2.      Don M. Downing ("Downing") is a citizen of the State of Missouri.  Downing was appointed Co-Lead Counsel of the *In re Genetically Modified Rice Litigation*, which multi-district litigation is pending before this Court, Case No. 4:06-MD-1811-CDP ("MDL"). Downing is part of the MDL Leadership Group appointed by the Court.  Downing is a signatory to the "MDL Settlement Agreement" as that term is defined in the Complaint in this action.

3.      Adam J. Levitt ("Levitt") is citizen of the State of Illinois.  Levitt was appointed Co-Lead Counsel of the LLRICE MDL in St. Louis.  Levitt is part of the MDL Leadership Group appointed by the Court.  Levitt is a signatory to the MDL Settlement Agreement.

## FACTS

4.      Riceland is a miller and wholesaler of long-grain rice and rice related products. Riceland purchases long grain rice from farmers who transport their rice to Riceland to be stored, dried, milled, and packaged for sale or sold in bulk.  Because Riceland is a cooperative, a large

portion of this rice is purchased from cooperative members, but Riceland also buys rice from non-member farmers.

5.      When used in this Counterclaim, "Bayer" is defined as Bayer CropScience LP, Bayer CropScience Holding, Inc., Bayer CropScience Inc., Bayer CropScience LLC, Stoneville Pedigreed Seed Company, Bayer Corporation, Bayer AG, Bayer CropScience AG, Bayer BioScience NV, Bayer CropScience Holding SA, Bayer CropScience SA, and StarLink Logistics Inc.  Bayer created, produced, patented and trademarked the genetically modified rice seeds intended to promote glufosinate herbicide tolerance referred to herein as LLRICE.

6.      On August 18, 2006, the United States Department of Agriculture ("USDA") announced that Bayer's LLRICE event 601 had been detected in the U.S. commercial rice supply.  Later testing in 2007 by the USDA and the Arkansas State Plant Board resulted in an announcement of the discovery that Bayer's LLRICE 604 strain had also infiltrated the commercial rice supply.  Bayer developed these genetically modified LLRICE traits in an effort to create a strain of genetically modified rice that could tolerate Bayer's Liberty® herbicide.  At the time the USDA statements were issued, LLRICE 601 and LLRICE 604 had not been authorized for commercial production or human consumption in the United States.

7.      Following the announcement that LLRICE had been detected in the commercial rice supply, hundreds (if not thousands) of lawsuits were filed by long-grain rice farmers as well as domestic and foreign rice mills against Bayer in federal and state courts (the "LLRICE Litigation").  Most of these cases were filed in the southern long-grain rice growing regions of the United States, including Arkansas, Louisiana, Mississippi, Missouri and Texas.

8.      On December 19, 2006, the Judicial Panel on Multidistrict Litigation created a multi-district litigation to consolidate all of the many LLRICE cases filed in federal court.  This federal MDL was consolidated before this Court, Case No. 4:06-md-1811-CDP.

9.      In April of 2007, this Court entered an order titling the MDL action the *In Re Genetically Modified Rice Litigation.*  The Court also appointed Counterclaim Defendants as Co-Lead Counsel for the MDL plaintiffs. When used in this Counterclaim, the term "MDL Leadership Group" includes Counterclaim Defendants as well as the other members of the plaintiffs' leadership group appointed by this Court.

10.     Bayer was not the only defendant made a party to the LLRICE Litigation.  Other individuals and entities were joined as defendants with Bayer in various suits including, by way of example, Louisiana State University and Jacko Garrett, among others.

11.     Riceland was named as a defendant with Bayer in more than two hundred LLRICE cases.  The vast majority of these cases involving Riceland were filed in Arkansas state court.  Many of the LLRICE cases brought against Riceland in Arkansas state court were filed by the attorneys who are members of the MDL Leadership Group.

12.     In 2009 and 2010 several cases filed by long-grain rice farmers proceeded to trial against Bayer.  Three cases were tried to conclusion in the federal MDL; three more were tried in Arkansas state court.  Bayer was defeated in each of these trials.  In every instance, the jury concluded that Bayer was negligent in its handling of LLRICE and awarded compensatory damages to the farmer-plaintiffs.  Punitive damages were imposed upon Bayer by Arkansas juries in two cases.

13.     Riceland was also a defendant in two of the trials referenced above, both of which were in Arkansas state court.  *Kyle, et al. v. Bayer, et al.*, Woodruff County Circuit Court Case

No. CV-2008-107 and *Sims, et al. v. Bayer, et al.*, Desha County Circuit Court Case No. CV-2009-118.   Riceland prevailed at trial in each instance.   Riceland obtained a jury verdict in *Kyle* and a directed verdict in *Sims*.   In both cases, Riceland vigorously defended itself, and all claims against Riceland were dismissed with prejudice.

14.     Meanwhile, in the MDL, the MDL Leadership Group requested the creation of a common benefit fund to compensate them for work they allegedly performed on behalf of participants in the MDL, including their own farmer-clients.   In sum, the MDL Leadership Group asked that a portion of each farmer's recovery – whether represented by the MDL Leadership Group attorneys or not – be taken from the farmer and paid to the MDL Leadership Group; this was in addition to the contingency fee the MDL Leadership Group attorneys and their firms were already charging their clients.   The MDL Leadership Group requested that parties to state court litigation also be required to participate in the fund.   Several parties objected to MDL Leadership Group's proposal on multiple grounds, including the ground that the Court did not have jurisdiction over and could not require a common benefit hold back from state court claimants.

15.     On February 24, 2010, the Court created a common benefit fund, the purpose of which was "to pay fees and expenses of attorneys who perform work benefitting all the plaintiffs."   However, the Court ruled that the common benefit order "cannot be as broad as requested," and that the Court "will not require defendants to hold back and contribute amounts from settlements and judgments related to cases pending in state courts."   *In re Genetically Modified Rice Litig.*, 4:06 MD 1811 CDP, 2010 WL 716190 (E.D. Mo. Feb. 24, 2010).

16.     In February 2011, Riceland proceeded to trial against Bayer on its own affirmative claims for relief.   *Meins, et al. v. Bayer, et al.*, Arkansas County Circuit Court Case

19

No. CV-2008-108.  After a month long trial, the Arkansas County jury returned a verdict in favor of Riceland.  The jury awarded Riceland $11.83 million in compensatory damages and $125 million in punitive damages.  The jury also found in favor of Riceland on Bayer's cross-claim for contribution and indemnity.  In its cross-claim against Riceland in *Meins*, Bayer contended that Riceland was liable to Bayer in contribution or indemnity for payments Bayer made to the *Meins* farmer-plaintiffs to settle the farmer-plaintiffs' claims against Bayer and Riceland.  Bayer contended that Riceland's negligence proximately caused the loss of the European Union market and any resulting damages to the *Meins* plaintiffs.  The *Meins* jury rejected Bayer's cross-claim and found that Bayer was 100% responsible for the loss of the European Union market and any resulting damages.

17.    On the eve of the *Meins* trial, the MDL Leadership Group filed a motion requesting the Court to compel Riceland to contribute a portion of any recovery it received in the *Meins* case to the common benefit fund.  On February 11, 2011, the Court issued an Order stating that "[t]he common benefit order in this MDL is limited to federal cases."  The Court further stated: "I have no jurisdiction over the state cases" and "[t]he leadership group has provided no new authority to the contrary."  The Court then denied the MDL Leadership Group's motion to enforce the common benefit order against Riceland.

18.    After having been rejected twice by this Court, on February 14, 2011 (the first day of the *Meins* trial), the MDL Leadership Group filed a motion to intervene in the *Meins* state court action and asked the circuit court to require Riceland to compensate the MDL Leadership Group for work they claim to have performed in the federal MDL which they contended benefitted Riceland.  That motion was orally argued to the circuit court in Stuttgart, Arkansas by

Mr. Levitt who appeared and represented the MDL Leadership Group.  On May 13, 2011, the circuit court denied the MDL Leadership Group's motion to intervene in *Meins*.

19.     On July 1, 2011, shortly after the *Meins* trial concluded, Bayer entered into a global producer settlement. The global producer settlement consisted of two separate settlements, which together, provided $750 million to resolve rice producers' claims arising out of the presence of Bayer LLRICE rice in the U.S. rice supply.  The two separate settlements were the MDL Settlement Agreement, which provided monetary recovery for farmer-plaintiffs in federal court cases and others who agreed to be bound by its terms, and the GMB Settlement Agreement, which provided monetary recovery for farmer-plaintiffs in state court cases.

20.     The MDL Leadership Group negotiated the terms of the MDL Settlement Agreement with Bayer. Counterclaim Defendants signed the MDL Settlement Agreement with Bayer.  A true and correct copy of the executed MDL Settlement Agreement is attached hereto as Exhibit A and incorporated herein by reference.

21.     The MDL Settlement Agreement states: "This Agreement shall be governed by and construed in accordance with the law of the State of Arkansas without regard to any choice-of-law rules that would require the application of the law of another jurisdiction."  Exhibit A, & 14.3.

22.     As part of the MDL Settlement Agreement, farmers who desired to settle their claims and receive compensation from Bayer were required to submit a claims package to the LLRICE Claims Administrator.  Pursuant to the MDL Settlement Agreement contract, before any recovery under the MDL Settlement Agreement was permitted, the farmers were required to execute a General Release of All Claims form ("the Release").  The MDL Settlement Agreement contract also required the farmer's attorney to sign the Release form to trigger payment.  If both

the farmer and the farmer's attorney did not execute the Release, Bayer did not have any obligation to pay the farmer any money under the MDL Settlement Agreement bargain.  The MDL Leadership Group was fully aware of this term of the MDL Settlement Agreement and they agreed to it.

23.     The Release was attached and expressly incorporated into the MDL Settlement Agreement as Exhibit D.  *See* Exhibit A.

24.     A true and correct copy of the Release form is attached hereto as Exhibit B and incorporated herein by reference.

25.     Every farmer who participated in the MDL Settlement Agreement and his attorney signed a Release identical to that attached hereto as Exhibit B.

26.     As part of the Release, each farmer (referred to in the Release as the "Settling Claimant") *and his attorneys* released their claims against Bayer.   Exhibit B, p. 2-4.   The farmer's attorney was expressly included in the Release as a "Settling Claimant Releasing Party."   Exhibit B, p. 2-4.   The farmer's attorney expressly agreed that it was a "Settling Claimant Releasing Party" under the terms of the Release by signing the Release.  Exhibit B, p. 2-4, 12-13.

27.     As part of the Release, each farmer *and his attorneys* also expressly released any claims that the farmer or attorneys had or could have against Riceland.  Riceland was expressly included as an "Additional Released Party" in the Release.  Exhibit B, p. 2-4.

28.     The Release states, in pertinent part, as follows:

Settling Claimant, to the full extent permitted by law, (i) if a natural person: for himself and his assigns, and for his and their current and former heirs, executors, administrators, attorneys and representatives and (ii) if other than a natural person: for itself and its current and former parents, subsidiaries and affiliates, the current and former agents (actual or apparent), servants, employees, officers, directors, members, managers, partners, owners, attorneys, and representatives of

any such Person and their respective heirs, executors, administrators, predecessors, successors and assigns (each a "Settling Claimant Releasing Party" and, collectively, the "Settling Claimant Releasing Parties"), . . . hereby releases, acquits and forever discharges . .  (ii) each of Riceland Foods, Inc. . . . as well as the current and former parents, subsidiaries and affiliates of each of them; the current and former agents (actual or apparent), servants employees, officers, directors, members, managers, partners, owners, attorneys, and representatives of any such Person; and their respective heirs, executors, administrators, predecessors, successors and assigns . . . ("Additional Released Parties") of and from any and all claims, demands, causes of action, liabilities, sums of money, damages (including, but not limited to, punitive damages), loss of service, expenses, compensation, costs and losses, of any type, kind, nature, description or character whatsoever, whether based on tort, contract or other theory of recovery and including claims for contribution and indemnity, whether known or unknown, suspected or unsuspected, whether liquidated or unliquidated, which the Settling Claimant Releasing Parties, or any of them, now has or which may hereafter accrue on account of or in any way growing or arising out of the presence in the United States rice supply of Bayer GM Rice Seed, against any Bayer Released Party or any Additional Released Party (collectively, the "Settling Claimants Released Claims.")

Exhibit B, p. 2-4.  The Release extinguishes all claims against Riceland by all farmers who participated in the MDL Settlement Agreement, and it also extinguishes all claims against Riceland by any attorneys who represented those farmers.

29.     In addition to the foregoing, on the issue of attorneys' liens, fees, and costs, the Release states as follows:

Settling Claimant represents and warrants that all legal expenses, bills, costs, or contingency fee agreements resulting from or arising out of representation of Settling Claimant by Settling Claimant's retained attorney in relation to Settling Claimant's claims have been paid or will be paid out of the proceeds of the settlement and are Settling Claimant's responsibility to pay, and that any liens based on any legal expenses, bills, costs, or contingency fee agreements incurred by Settling Claimant's retained attorney as a result of Settling Claimant's alleged injuries will be satisfied by Settling Claimant.

Exhibit B, p. 7.

30.     In accordance with the foregoing and the MDL Settlement Agreement, common benefit withholdings equal to 11% of the total settlement proceeds awarded to each MDL farmer-claimant were automatically deducted and paid into the common benefit trust fund.

31.     The Release further states, "This Release was entered into in good faith based upon arms-length negotiation between Settling Claimant, Bayer and their respective counsel." Exhibit B, p. 8.

32.     At the bottom of the Release, the signature block reads as follows:   "IN WITNESS WHEREOF, Claimant, Claimant's Representative (if any) and Claimant's Counsel (if any) have each executed this Release, as of the dates set forth below."   Exhibit B, p. 12.    The Release then provides separate spaces for signatures by the Settling Claimant and Settling Claimant's attorney.  Exhibit B, p. 12-13.

33.     By signing the Release, the farmer agreed to, consented, and ratified the terms of the Release, including the release of all claims against Riceland by both the farmers and their attorneys.

34.     By signing the Release, the farmer's attorney agreed to, consented to, and ratified the Release and all of its terms, including the release of all claims the attorneys had against Riceland.

35.     The MDL Settlement Agreement, which is incorporated into the Release, states at paragraph 14.14:

> It is understood and agreed by the parties that money damages would not be a sufficient remedy for any breach of this Agreement by any party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach in addition to any other remedy available at law or in equity, without the necessity of demonstrating the inadequacy of money damages.

Exhibit A, & 14.14.

36.     Moreover, the Release further provides that Riceland, as an "Additional Released Party may plead this Release as a complete defense and bar to any Settling Claimant Released Claim brought in contravention hereof and, in the event any Settling Claimant Releasing Party brings a Settling Claimant Released Claim, the Settling Claimant shall indemnify, defend and hold  . . . [Riceland] harmless from and against any and all costs, fees, liabilities, expenses, damages, judgments, interests, debts, or losses suffered or incurred in connection therewith[.]" Exhibit B, p. 5.

37.     Riceland was intentionally included as an Additional Released Party in the Release for the purpose of providing finality and certainty as to the universe of claims against Bayer.  Specifically, Riceland had sued Bayer for contribution and indemnity related to certain farmer claims against Riceland; therefore, Bayer wanted all claims against Riceland released. Moreover, upon information and belief, Bayer also demanded this provision because it wanted to get a release of all claims against Riceland so that Bayer could pursue a contribution claim against Riceland and seek to recover some or all of the settlement proceeds Bayer paid to farmers and their attorneys under the MDL Settlement Agreement.  The MDL Settlement Agreement specifically states that "Bayer may seek contribution from any Additional Released Party." Exhibit A, & 14.15.  Counterclaim Defendants and the MDL Leadership Group negotiated this term of the MDL Settlement Agreement and Release with Bayer and intentionally gave up any rights to pursue any action against Riceland as part of their compromise with Bayer.  Regardless of the reason, Bayer included a term in the MDL Settlement Agreement requiring that the farmer and his attorney release all claims against Riceland.  The MDL Leadership Group, the farmers who participated in the MDL Settlement, and the attorneys of those farmers agreed to this term.

The release of Riceland by the farmers and their attorneys is an unambiguous term in the MDL Settlement Agreement and incorporated Release.

38.     Bayer did, in fact, pursue a claim for contribution against Riceland for all settlement proceeds paid out under the global settlement agreement in the case of *BASF Corporation, et al. v. Bayer AG, et al.*, Arkansas County Circuit Court Case No. CV-2008-107. Bayer alleged that Riceland's negligence caused the loss of the European Union market and any damages sustained by the farmers. Bayer's contribution claim against Riceland has since been dismissed with prejudice.

39.     The Counterclaim Defendants have represented farmers who have participated in the MDL Settlement Agreement.

40.     Upon information and belief, all or nearly all of Counterclaim Defendants' farmer clients have executed a Release and have thereby released all claims against Riceland.  In each such instance, counsel for the farmer client also executed the Release.

41.     Upon information and belief, the Counterclaim Defendants have executed a Release and have thereby released all claims against Riceland.  Counterclaim Defendants thus constitute "Settling Claimant Releasing Parties" under the terms of the Release.

42.     Nevertheless, on February 20, 2013, Counterclaim Defendants "individually and on behalf of all persons and entities that provided or paid for common benefit services, materials, and/or related expense items" filed their putative Class Action Complaint ("Complaint") against Riceland in this action.

43.     The Complaint was drafted, prepared, authorized, approved, initiated, ratified, and filed by and on behalf of the Counterclaim Defendants and the entire MDL Leadership Group.

44.     Upon information and belief, the Counterclaim Defendants have worked together with the MDL Leadership Group, among others, to draft and file the Complaint against Riceland and/or agreed to, consented to, and otherwise knowingly and consciously conspired with each other to cause it to be drafted, prepared, and filed.  This common plan and conspiracy with each other to draft and file this lawsuit despite knowing these claims are released and forever barred was improper, tortious, and done with the specific intent to cause harm to Riceland in Arkansas.

45.     In the Complaint, Counterclaim Defendants assert claims against Riceland for unjust enrichment and quantum meruit for services they allege to have rendered and costs they allege to have incurred in the federal *In re Genetically Modified Rice Litigation* MDL.

46.     The claims asserted against Riceland by Counterclaim Defendants in the Complaint unambiguously constitute "Settling Claimant Released Claims" within the meaning of the Release and MDL Settlement Agreement.

## RICELAND'S CLAIMS AGAINST THE COUNTERCLAIM DEFENDANTS

### Count 1 – Breach of Contract

47.     Riceland incorporates by reference paragraphs 1-46 above.

48.     Counterclaim Defendants entered into the MDL Settlement Agreement with Bayer.

49.     Counterclaim Defendants enrolled their farmer clients as Settling Claimants under the MDL Settlement Agreement.

50.     Counterclaim Defendants and their farmer clients each executed the Release contained within the MDL Settlement Agreement.

51.     The Release released Counterclaim Defendants' and their farmer clients' claims against Bayer and Riceland, including those which Counterclaim Defendants assert in the Complaint.

52.     By settling their claims and releasing Bayer and Riceland from any further liability, Counterclaim Defendants and their farmer clients agreed to dismiss all legal actions against Bayer and Riceland and not to pursue litigation against Bayer and/or Riceland related to the released claims.

53.     By drafting, filing, and pursuing the Complaint against Riceland and suing Riceland for unjust enrichment and quantum meruit for services they allege to have rendered and costs they allege to have incurred in the federal *In re Genetically Modified Rice Litigation* MDL, Counterclaim Defendants have breached the Release and the MDL Settlement Agreement and have caused all members of the putative class that executed a Release to do likewise.

54.     Bayer has made all payments and fulfilled all obligations to the Counterclaim Defendants and their farmer clients required of Bayer pursuant to the terms of both the Release and MDL Settlement Agreement.

55.     Counterclaim Defendants did not do what the Release and MDL Settlement Agreement required of them because they filed suit against Riceland after having released all claims against Riceland.

56.     The parties to the Release and MDL Settlement Agreement—including Bayer, Counterclaim Defendants, and their farmer clients—clearly intended to benefit Riceland under the contract.  Riceland is expressly named in the Release and MDL Settlement Agreement as an "Additional Released Party."  The covenants in the Release and MDL Settlement Agreement are "for the sole and exclusive benefit of the Bayer Released Parties, the Additional Released Parties

and their respective successors and permitted assigns."  Exhibit B, p. 9.  The language of the MDL Settlement Agreement and Release contract unambiguously make Riceland an express third party beneficiary of the Release and MDL Settlement Agreement and expressly grants Riceland the power to enforce the Release against the Counterclaim Defendants.

57.     As result of Counterclaim Defendants' breach of contract, Riceland has sustained, and continues to sustain, damages in excess of $75,000, including but not limited to attorneys' fees, expenses and costs incurred in defending against the Complaint.  These damages would not have been sustained but for Counterclaim Defendants' breach of contract.

58.     Riceland has sustained and seeks compensatory damages, including consequential damages, in an amount in excess of $75,000.00 related to the actions and omissions of the Counterclaim Defendants and for the aforementioned elements of damage, and others, as determined by the trier of fact.

59.     In accordance with the Release and paragraph 14.14 of the MDL Settlement Agreement, Riceland seeks specific performance of the contract. Counterclaim Defendants have agreed in paragraph 14.14 that Riceland need not prove that money damages are insufficient in order to obtain injunctive relief.   Regardless of paragraph 14.14, Riceland would nevertheless be entitled to injunctive relief because money damages are insufficient to place Riceland in the same position it would have been in had Counterclaim Defendants fulfilled their bargain. Riceland asks this Court to order specific performance and to issue a preliminary and permanent injunction enjoining Counterclaim Defendants from breaching the Release and MDL Settlement Agreement.

### Count 2 – Tortious Interference with Contract and/or Business Expectancy

60.     Riceland incorporates by reference paragraphs 1-59 above.

61.     In addition to the farmer-clients represented by Counterclaim Defendants, many other farmers who were not represented by the Counterclaim Defendants participated in the MDL Settlement Agreement (the "Other Farmers").  These Other Farmers (and their attorneys) also executed Releases in favor of Bayer and Riceland pursuant to the MDL Settlement Agreement.

62.     As stated above, all farmer participants in the MDL Settlement Agreement — including these Other Farmers — had a portion (11%) of their settlement proceeds withheld and paid into the MDL common benefit fund.

63.     In their Complaint, Counterclaim Defendants defined the class to include "all persons and entities that . . . paid for common benefit services, materials, and/or related expense items[.]"

64.     Consequently, these Other Farmers are part of the putative class as defined by the Counterclaim Defendants in the Complaint they filed.[1]

65.     The Other Farmers executed valid and binding contractual Releases in accordance with the terms of the MDL Settlement Agreement.  By executing these Releases, the Other Farmers released all claims against Bayer and Riceland.

66.     Riceland is expressly named as an "Additional Released Party" in each of those Releases.

67.     As a third-party beneficiary of the Other Farmers' Releases, Riceland had a valid contractual relationship and/or business expectancy that it would not be sued or subjected to suit by the Other Farmers, any attorneys of the Other Farmers, or any person purporting to make claims on behalf of either of the aforementioned for claims released by the Other Farmers and

---

[1] Riceland denies the putative class in the Complaint is properly defined, denies that class certification or treatment is appropriate, and denies that it has any liability whatsoever to the named class members or any putative class members.

their attorneys in their Releases.  Riceland had a valid contractual relationship and/or business expectancy that it would not be sued by the Other Farmers, either individually or as a class, for the claims asserted in the Complaint.

68.   Counterclaim Defendants had knowledge that these Other Farmers and their attorneys had executed Releases in favor of Riceland and were fully aware and had complete knowledge of Riceland's contractual relationship and/or business expectancy with respect to the Other Farmers.

69.   Counterclaim Defendants have acted in concert to draft and file a Complaint on behalf of persons, including the Other Farmers, whom Counterclaim Defendants knew had previously and fully released their claims against Riceland.  Counterclaim Defendants have agreed to, consented to, ratified, and/or actively taken steps that proximately caused the Complaint to be drafted and filed.  By acting in concert with one another, Counterclaim Defendants intentionally and improperly induced or caused disruption of, substantial interference with, or termination of the contractual relationship or business expectancy via this Complaint against Riceland which asserts against Riceland claims previously released by these Other Farmers.

70.   Counterclaim Defendants' conduct was improper on many levels.  Counterclaim Defendants have taken actions that directly breach the contractual promises of the Other Farmers without any good faith basis and without probable cause.  Also, upon information and belief, Counterclaim Defendants knew multiple Other Farmers objected to the filing of this Complaint because it directly conflicts with the Other Farmers' pecuniary interests.  Yet, Counterclaim Defendants have improperly filed the Complaint subjecting the Other Farmers to potential liability for breach of contract and pecuniary injury caused by the Complaint.  Counterclaim

Defendants appear to have been motived solely by greed and an attempt to line their pockets rather than any thought about how their actions would affect the Other Farmers.  Upon information and belief, Counterclaim Defendants will not distribute the recovery – if any – made on behalf of the Other Farmers in the Complaint back to the Other Farmers, but Counterclaim Defendants instead plan to retain any potential recovery wholly for themselves.  Counterclaim Defendants have no attorney-client relationship with the Other Farmers and have no duty or authority to act on behalf of the Other Farmers.  To the extent that Counterclaim Defendants claim to have any duty to act on behalf of the Other Farmers, which Riceland denies, Counterclaim Defendants' filing of the Complaint is a breach of that fiduciary duty to the Other Farmers and a direct conflict of interest because the Counterclaim Defendants are taking a position directly adverse to the interests of the Other Farmers.  Counterclaim Defendants' actions are in bad faith, oppressive, and improperly interfere with Riceland's valid and enforceable contract and/or business expectancy.

71.     Counterclaim Defendants have knowingly, intentionally, and purposely caused the Other Farmers to breach their Release agreements.  Counterclaim Defendants' tortious interference was specifically designed to harm, injure, and damage Riceland.  Counterclaim Defendants knew that harm to Riceland was substantially certain to be produced as a result of their conduct.  Counterclaim Defendants' tortious interference with Riceland's reasonable and legitimate contractual and/or business expectancy was done with malice, in bad faith, and with an improper motive or purpose.

72.     As a direct and proximate result of Counterclaim Defendants' tortious conduct, Riceland has sustained and will continue to sustain actual damages.  Riceland's damages include but are not limited to the following:  attorneys' fees, expenses, and costs incurred in defending

against the Complaint, lost business opportunity, time, labor, and other consequential damages, and any other element of damages awarded by the jury.

73.     These damages would not have been sustained but for Counterclaim Defendants' intentional and wrongful conduct in causing the Other Farmers to breach their Release agreements.

74.     Counterclaim Defendants' intentional and purposeful disruption and termination of Riceland's contract and/or business expectancy was the proximate cause of Riceland's damages.

75.     Riceland has sustained actual damages in an amount in excess of $75,000.00 as a result of the aforementioned circumstances that would not have occurred but for the Counterclaim Defendants' tortious conduct.

76.     Riceland sustained and seeks compensatory damages in an amount in excess of $75,000.00 related to the actions and omissions of the Counterclaim Defendants and for the aforementioned elements of damage, and others, as determined by the trier of fact.

### Count 3 – Punitive Damages

77.     Riceland incorporates by reference paragraphs 1-76 above.

78.     In addition to compensatory damages, Riceland seeks an award of punitive damages in an amount to be assessed by the trier of fact sufficient to punish the Counterclaim Defendants for the aforementioned acts, omissions and conduct, and to deter similar future conduct.   Riceland is entitled to punitive damages because the Counterclaim Defendants intentionally pursued a course of conduct for the purpose of causing injury to Riceland. Additionally, Counterclaim Defendants knew or ought to have known that their actions would

naturally and probably result in damage to Riceland; however, they continued such conduct in reckless disregard of the consequences to Riceland, from which malice is inferred.

79.     Riceland demands a trial by jury.

WHEREFORE, if this Court assumes and exercises jurisdiction over this action (which Riceland denies would be appropriate), Riceland would request the following as its relief against Counterclaim Defendants:

a)      That the Court enter judgment in favor of Riceland and against Counterclaim Defendants, jointly and severally, for compensatory damages sustained by Riceland and for punitive damages in a sum to be determined by the trier of fact;

b)      That the Court order specific performance of Counterclaim Defendants' contractual obligations and issue a preliminary and permanent injunction enjoining Counterclaim Defendants from breaching the Release and MDL Settlement Agreement;

c)      For its attorneys' fees pursuant to Ark. Code Ann. 16-22-308 and for its costs and expenses in bringing this action;

d)      For prejudgment and post-judgment interest at the maximum rate allowed by law; and,

e)      For all other just and proper relief.

Respectfully submitted,

THOMPSON COBURN LLP

By:/s/ Christopher M. Hohn
    John R. Musgrave, #20359MO
    Christopher M. Hohn, # 44124MO
    Kimberly M. Bousquet, # 56829MO
    One U.S. Bank Plaza, Suite 3500
    St. Louis, Missouri 63101
    (314) 552-6000 (telephone)
    (314) 552-7000 (facsimile)
    jmusgrave@thompsoncoburn.com
    chohn@thompsoncoburn.com
    kbousquet@thompsoncoburn.com

*Attorneys for Defendant Riceland Foods, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was filed electronically with the Clerk of the Court to be served via operation of the Court's electronic filing system this 26th day of April, 2013, upon all counsel of record.

/s/ Christopher M. Hohn

35