UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DON M. DOWNING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:13CV321 CDP |
| | ) | |
| RICELAND FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This court established a trust to compensate some attorneys who shouldered enormous costs for their clients as part of the ongoing multi-district litigation that began when Bayer's genetically modified rice entered the domestic rice supply. There are two groups of plaintiffs in this case. Co-trustees of the trust compose the first group; the second group comprises three law firms acting as named plaintiffs on behalf of a class whose members contributed to or are allegedly owed reimbursement from the trust. Each set of plaintiffs sued Riceland Foods, Inc., under theories of quantum meruit and unjust enrichment, because Riceland has refused to contribute to the trust except where ordered by the courts.

Riceland brought a counterclaim against Plaintiffs, alleging that by bringing this lawsuit, they breached and tortiously interfered with a settlement agreement

reached in the underlying multi-district litigation, to which Riceland was a third-party beneficiary, and the settlement's accompanying release.

This matter reaches the court on Plaintiffs' motion to dismiss Riceland's counterclaim. Because Plaintiffs' quantum meruit and unjust enrichment claims are not governed by the settlement agreement and release, I will grant the motion to dismiss.

### 1. **Background**

This case is tangentially related to the continuing multi-district litigation ("MDL") that began after the introduction of Bayer's genetically modified rice into the United States domestic rice supply.[1] Thousands of rice producers and non-producers filed suit against various Bayer entities in federal and state court. Riceland Foods was named as a defendant along with Bayer in more than 200 cases. Riceland also acted as a plaintiff in several state cases.

To make the MDL more manageable for the plaintiffs, the court appointed Don Downing and Adam Levitt as Co-Lead Counsel of a leadership group of attorneys. A common benefit trust fund was ordered established to compensate attorneys for services rendered on behalf of all the plaintiffs; Downing and Levitt were named as Co-Trustees of the trust. That order required that a portion of any recovery obtained by plaintiffs in federal court be set aside and contributed to the

---

[1] *In re Genetically Modified Rice Litigation*, Case No. 4:06MD1811 CDP.

trust. It also allowed contributions to the trust to be made in state court cases if ordered by the state court or if plaintiffs in those cases agreed to contribute to the trust. Riceland, in the cases in which it is a state-court plaintiff, has steadfastly refused to contribute to the trust.

Most of the rice cases have now been tried or settled. The settlements involved a Settlement Agreement entered into by Bayer, the Negotiating Claimants' Counsel (defined as the group of five signatories, including counter-defendants Downing and Levitt), and each Enrolled Claimant and Eligible Claimant, which are defined terms under the Settlement Agreement. Among the documents incorporated by the Settlement Agreement was a General Release of All Claims ("the Release"). The Release required execution by the Settling Claimant and Claimant's Counsel and named Riceland as a third-party beneficiary.

This case represents an attempt to force trust contributions from Riceland under theories of quantum meruit and unjust enrichment. The amended complaint is brought by the Co-Trustees and by three law firms[2] that are the named plaintiffs on behalf of a class of those persons or entities that provided or paid for common-benefit services, materials, and expenses.

The amended complaint alleges that Riceland had access to the common-benefit services, materials, and expenses paid for by the Class. The complaint

---

[2] Gray, Ritter & Graham, P.C.; Wolf Haldenstein Adler Freeman & Herz, LLC; and Looper Reed & McGraw, P.C.

further alleges that Riceland used these benefits in its state court cases for its trial strategy, discovery, motions, responses, exhibits, arguments, testimony, and cross-examination – sometimes using material verbatim from the MDL cases. Riceland eventually received a settlement as a plaintiff in one such case for approximately $80 million. The amended complaint asserts counts against Riceland for unjust enrichment and quantum meruit based upon the benefits conferred upon Riceland, for which Riceland has not reimbursed the trust.

Riceland brought a counterclaim, asserting that the filing of this lawsuit constitutes breach of contract and tortious interference; both counts are predicated upon the Settlement Agreement and Release. It is Riceland's counterclaim that is the subject of the motion to dismiss. Plaintiffs present three main arguments for dismissal. First, Plaintiffs contend that the claims presented in their lawsuit do not "grow out of," "arise out of," or "accrue on account of" the presence of Bayer GM rice seed, and so the claims were not settled or released. Plaintiffs next contend that they and the class members do not qualify as "Settling Claimant Releasing Parties," and so they are not bound by the terms of the Release. Plaintiffs' third argument is that a release, unlike a covenant not to sue, cannot serve as the basis for a breach of contract action. Because I agree that the claims brought by Plaintiffs were not released, I need not reach the remaining arguments.

As alluded to above, the Settlement Agreement established a program to resolve claims against Bayer. To fully participate in the program, each person with an interest in a crop of rice affected by the presence of Bayer GM Rice Seed in the United States Rice Supply (an "Eligible Claimant") submitted a completed "Enrollment and Claims Package" (Package). The Package included an agreement to be bound by the Settlement Agreement and a Release, among other documents. An "Enrolled Claimant," was defined as an Eligible Claimant who had submitted the Package. The Settlement Agreement further reserved for Bayer the ability to seek contribution from any "Additional Released Party," defined to include Riceland, and incorporated the Release: "This Agreement and the Release extinguish any and all Liability on behalf of the Additional Released Parties to the Enrolled Claimants in any way growing or arising out of the detection in the United States Rice Supply of Bayer GM Rice Seed. Settlement Agreement ¶ 14.15.

The Release defines the claims subject to its terms:

[Settling Claimant Releasing Parties[3] release the Bayer Released Parties[4] and the Additional Released Parties,[5] defined to include

---

[3] Settling Claimant, to the full extent permitted by law, (i) if a natural person: for himself and his assigns, and for his and their current and former heirs, executors, administrators, attorneys and representatives and (ii) if other than a natural person: for itself and its current and former parents, subsidiaries affiliates, the current and former agents (actual or apparent), servants, employees, officers, directors, members, managers, partners, owners, attorneys, and representatives of any such Person and their respective heirs, executors, administrators,

> Riceland,] of and from any and all claims, demands, causes of action, liabilities, sums of money, damages (including, but not limited to, punitive damages), loss of service, expenses, compensation, costs and losses, of any type, kind, nature, description or character whatsoever, whether based on tort, contract or other theory of recovery and including claims for contribution and indemnity, whether known or unknown, suspected or unsuspected, whether liquidated or unliquidated, which the Settling Claimant Releasing Parties, or any of them, now has or which may hereafter accrue on account of or in any way growing or arising out of the presence in the United States rice supply of Bayer GM Rice Seed, against any Bayer Released Party or any Additional Released Party (collectively, the "<u>Settling Claimant Released Claims</u>").

Release p. 2–4 (emphasis in original). The Release also includes a covenant not to sue:

> Settling Claimant, on Settling Claimant's behalf and all other Settling Claimant Releasing Parties, covenants and agrees that except to the extent provided herein Settling Claimant will not sue or bring any action or cause of action, including, without limitation, by way of third party claim, cross-claim or counterclaim, against any Bayer Released Party and/or any Additional Released Party in respect of any Settling Claimant Released Claim.

Release p. 4. The Release further allows Bayer or an Additional Insured to "plead the Release as a complete defense and bar to any Settling Claimant Released Claim brought in contravention" to its terms and requires the Settling Claimant to

---

> predecessors, successors, and assigns (each a "<u>Settling Claimant Releasing Party</u>" and, collectively, the "<u>Settling Claimant Releasing Parties</u>") . . . .

[4] The term Bayer Released Parties is defined to include a number of Bayer entities and their assigns, attorneys, subsidiaries, affiliates, parents, officers, agents, etc.

[5] The term Additional Released Parties is defined to include Riceland and other entities and their assigns, attorneys, subsidiaries, affiliates, parents, officers, agents, etc.

indemnify the Bayer Released Parties and Additional Released Parties from any costs or fees suffered in the enforcement of the Release's terms. Release p. 5.

### 2. **Legal Standards**

When ruling on a motion to dismiss a counterclaim, the court must view the allegations in the counterclaim liberally in the light most favorable to the counterclaimant. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The counterclaimant's factual allegations are accepted as true, but the allegations must supply sufficient facts to "state a claim that is plausible on its face." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Generally, when considering a motion to dismiss where the court is presented with and considers matters outside of the pleadings, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). However, a court does not need to convert the motion if the matters presented are incorporated by reference, "are necessarily embraced by the pleadings," are integral to the claim, or are exhibits, attached to the complaint, whose authenticity is unquestioned. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012). Pursuant to Rule 10(c) of the Federal Rules of Evidence, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Accordingly, when ruling on the motion to dismiss, I may examine the Settlement Agreement

and the Release, both of which were attached as exhibits to Riceland's Amended Answer to the Complaint. *See Stahl v. U.S. Dep't. of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003); *Stodghill v. Welton Sch. Dist.*, No. 4:05-CV-1417 CEJ, 2006 WL 2673130, at *2 (E.D. Mo. Sept. 18, 2006).

### 3. Discussion

Plaintiffs move for dismissal on all counts of Riceland's counterclaim: Count I claims breach of Contract, Count II claims tortious interference, and Count III seeks punitive damages.

### 3.A. Breach of Contract

The parties agree that Arkansas law governs the breach of contract dispute, because the Settlement Agreement contains a choice of law provision requiring that it be construed according to the laws of that state. The terms of a release are interpreted according to the standard rules of contract interpretation. *P. Rye Trucking, Inc. v. Pet Solutions, LLC*, 377 S.W.3d 334, 335 (Ark. Ct. App. 2010) (citing *Wal-Mart Stores, Inc. v. Coughlin*, 255 S.W.3d 424 (Ark. 2007)). The first rule of construction for interpreting a contract is to give to the language the meaning that the parties intended. *Asbury Auto. Used Car Ctr. v. Brosh*, 314 S.W.3d 275, 279 (Ark. 2009). Contracts must be interpreted according to the plain meaning of the language employed, where the parties have expressed their intent clearly and unambiguously. *Stacy v. Williams*, 834 S.W.2d 156, 158 (Ark. Ct.

App. 1992) (en banc). Intent is gauged from the whole context of the agreement and not by any particular phrase. *Coleman v. Regions Bank*, 216 S.W.3d 569, 574 (2005). When attempting to harmonize different clauses of a contract that appear contradictory, the court must reconcile them if possible to avoid negating any provision. *Byme, Inc. v. Ivy*, 241 S.W.3d 229, 236 (Ark. 2006). "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation." *Rausch Coleman Homes, LLC v. Brech*, 303 S.W.3d 456 (Ark. Ct. App. 2009).

Plaintiffs contend that their claims for unjust enrichment and quantum meruit related to the common-benefit services provided are not within the scope of the Release, which applies to claims "accru[ing] on account of or in any way growing or arising out of the presence in the United States rice supply of Bayer GM Rice Seed . . . ." They propose that the quoted language requires a causal connection equal to legal proximate cause in order for a claim to be covered. Riceland responds that this language includes claims relating at all to the rice contamination, including claims stemming from their use of litigation materials from the Rice MDL.

Interpretations of the phrase "arising out of" by Arkansas courts have occurred primarily in the insurance context, and even then, case law is sparse. *Cf. Hisaw v. State Farm Mut. Auto Ins. Co.*, 122 S.W.3d 1, 5 (Ark. 2003) ("There is a

dearth of Arkansas law interpreting the "arising out of" language and the degree of causation required."). When construing an insurance contract for coverage, the phrase has been interpreted broadly to impose a causal requirement less than legal proximate cause but more than "but for' causation. *Id.* at 7. The *Hisaw* court described the claimant's burden when establishing insurance coverage for bodily injury arising out of the use of an automobile: she must show that the vehicle was "integrally related to the claimant's activities at the time of the accident." In contrast, where an insurance exclusion clause is at issue, the phrase is interpreted narrowly; "arising from" is equated with proximate cause. *Crossett Paper Mills Emp. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 476 F.3d 578, 580 (8th Cir. 2007) (citing *Hisaw*, 122 S.W.3d at 7).

The operative words – on account of . . . growing or arising out of – require a causal connection between the presence of GM's rice and the claim.[6] The Release, of course, is not an insurance contract. It is unclear from the contractual language whether the executing parties intended the level of causation to rise to the same level as when used in insurance provisions. *Cf. Smith v. S. Farm Bureau Cas. Ins. Co.*, 114 S.W.3d 205, 206 (Ark. 2003) (interpreting ambiguities in

---

[6] Arise is defined as "to come into being" and "to result, issue, or proceed," *Webster's II New Riverside University Dictionary* 124 (1988) (*Webster's*); *see also Oxford English Dictionary*, *available at* http://www.oed.com/view/entry/10739 ("17. Of circumstances viewed as results: To spring, originate, or result from."). Grow includes the definition "to come into existence from a source." *Webster's* 551. "On account of" means "because of." *Webster's* 72.

insurance contracts against the insurer). To determine the meaning of the phrase "on account of or in any way growing or arising out of," I must look to the contract as a whole.

Riceland believes the drafters made clear their intent to include all claims related in any form to the rice contamination – regardless of causality – by using the below-emphasized language, which Riceland considers all-inclusive:

> [Settling Claimant Releasing Parties release the Bayer Released Parties and Riceland] of and from any and all claims, demands, causes of action, liabilities, sums of money, damages (including, but not limited to, punitive damages), loss of service, expenses, compensation, costs and losses, *of any type, kind, nature, description or character whatsoever*, whether based on tort, contract or other theory of recovery and including claims for contribution and indemnity, whether known or unknown, suspected or unsuspected, whether liquidated or unliquidated, which the Settling Claimant Releasing Parties, or any of them, now has or which may hereafter accrue on account of or in any way growing or arising out of the presence in the United States rice supply of Bayer GM Rice Seed . . . .

(emphasis added).

This language is certainly broad enough to cover a wide variety of claims, but it does not change the fact that the released claims must be causally connected to the presence of Bayer rice. *Cf. P. Rye Trucking*, 377 S.W.3d at 338 (limiting release to claims for property damage and injuries from property damage despite language absolving party "from any and all claims . . . of whatever kind or

nature").[7] Had the settling parties intended to include all claims even remotely related to the presence of Bayer GM Rice Seed, they would have avoided words with causal connotations.[8]

Riceland contends that the broad language was intended to protect Riceland from litigation related to its refusal to contribute to the common-benefit trust, because that controversy existed at the time the Release was drafted. This position is undermined by the conspicuous absence of Riceland from the clause absolving the Bayer Released Parties from any claims related to the conduct of the litigation: "This Release shall also release the Bayer Released Parties and their attorneys from any and all claims . . . related to the conduct of the Bayer Released Parties and/or their attorneys in the prosecution or defense of any claim being released hereby."[9] Release p. 7. Moreover, when reading this clause in tandem with the paragraph releasing both Bayer and Riceland, it becomes clear that the drafters did not consider claims "related to" Bayer's rice-litigation conduct to "arise" out of the presence of Bayer's rice in the U.S. market. Had that been the drafters' intent, this clause would have been unnecessary.

---

[7] The release in that case discharged the party "of and from any and all claims, demands, damages, causes of action, or suits at law or in equity, of whatever kind or nature, for or because of any matter or thing done, omitted, or suffered to be done by the said parties herein released, for property damage and any and all known and unknown injuries resulting or to result from all claims for damage to property . . . ." *Id.*

[8] Riceland repeatedly argues that all claims "related to" Bayer's rice were released; this phrase, had it been used instead, would have given Riceland a better argument.

[9] The clause also omitted all other Additional Released Parties.

The drafters chose different operative words and omitted Riceland from the portion of the Release governing litigation conduct. Were I to construe the Release in the way Riceland asks, I would violate Arkansas's rules of construction by rendering the clause absolving the Bayer Released Parties from litigation conduct redundant and the distinctions between the clauses meaningless. *Cf. Smith*, 114 S.W.3d at 207–08.

Riceland also argues that Plaintiffs' more restrictive interpretation cannot be the meaning intended by the drafters, because it would conflict with the inclusion of attorneys as Settling Claimant Releasing Parties. Riceland premises this argument on its belief that the only claims released by the Settling Claimants' attorneys must be those related to legal services provided, including common-benefit services. However, it has been historically possible for an attorney to have an interest in the land of her clients. *Cf. Greenlee v. Roland*, 107 S.W. 193, 194 (Ark. 1908). It is therefore plausible that an attorney might have a claim more closely related to the presence of Bayer's rice seed than a claim related to legal services. Plaintiffs' interpretation does not necessarily delete the term "attorneys" from the membership rolls of the Settling Claimant Releasing Parties, and so the interpretation does not create an impermissible contradiction between the clauses.

Plaintiffs offer an alternative interpretation to explain away any contradiction related to the inclusion of attorneys among the Settling Claimant

Releasing Parties: attorneys only released claims derivative of their clients' claims.

This interpretation has some merit. Attorneys of the Settling Claimant were listed among the defined members of the Settling Claimant Releasing Parties, as were heirs, assigns, executors, administrators, and representatives, among others. *See supra*, n.3. Using *noscitur a sociis*, the doctrine of statutory construction literally meaning "it is known from its associates," the drafters' intended meaning with regard to the inclusion of attorneys could be gauged from the accompanying terms. *See McKinney v. Robbins*, 892 S.W.2d 502, 504 (Ark. 1995). Thus, the sort of claim intended to be available for release by a claimant's attorney could be evaluated according to those available to the accompanying class constituting the Settling Claimant Releasing Parties. The other party members could each have claims derivative of the Settling Claimant's or brought on its behalf in an agency capacity. An interpretation that requires such claims to be derivative or that binds an attorney only so far as she was acting as Settling Claimant's agent is also consistent with the wording of several other clauses in the Release, including:

> Settling Claimant, on Settling Claimant's behalf and all other Settling Claimant Releasing Parties, covenants and agrees that . . . Settling Claimant will not sue . . . .

and

> Settling Claimant warrants and represents that such Person is the sole and lawful owner of all rights, title and interest in and to the matters released and settled by such Person herein, or otherwise has . . . the requisite power and authority to release and settle such matters on

behalf of Settling Claimant and all Settling Claimant Releasing Parties
. . . .

This provides a much more elegant and manageable Release – one that would sidestep the otherwise unavoidable inquiries that Riceland contends must be made, including whether the Settling Claimants had the authority to release claims on behalf of their own attorneys.

Ultimately, I do not need to construe the term attorneys or the capacity in which attorneys' claims were released. For the reasons stated above, my interpretation of the Settling Claimant Released Claims gives effect to all provisions without removing the term "attorneys" from the Settling Claimant Releasing Parties. The interpretation does not impermissibly create contradictions. *Cf. North v. Philliber*, 602 S.W.2d 643, 645 (Ark. 1980).

The plain language of the Release defines the Settling Claimant Released Claims as those claims accruing on account of or in any way growing or arising out of the presence of GM rice seed in America's rice supply. When reading that clause in the context of the entire Release, it is clear that the drafters did not intend for Plaintiffs' claims for unjust enrichment and quantum meruit to fall within that class of claims.

The operative clauses within the Release setting forth the covenant not to sue and the release of claims expressly name the Settling Claimant Released

Claims as the claims released and to which the covenant applies. Riceland fails to state a claim for breach of contract.

Because I find that Plaintiffs' claims are not governed by the release, I need not decide the legal question of whether a release may form the basis for a breach of contract action.

3.B. <u>Tortious Interference with Contract</u>

The parties dispute whether Arkansas or Missouri law should be applied to Riceland's tortious interference claim. I ultimately need not reach this issue, because Riceland's claim for tortious interference fails under either state's law.

Arkansas requires five components to be met when stating a tortious interference claim:

> (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. [Arkansas] law also requires that the conduct of the defendants be at least "improper" . . . .

*Baptist Health v. Murphy*, 373 S.W.3d 269, 281–82 (Ark. 2010) (internal citations omitted). Thus, where there is no breach of contract, there can be no tortious interference. *El Paso Prod. Co. v. Blanchard*, 269 S.W.3d 362, 373–74 (Ark. 2007).

Under Missouri law, the following elements are essential to a claim for tortious interference with a contract or business expectancy: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Rhodes Eng'g Co., Inc. v. Pub. Water Supply Dist. No. 1*, 128 S.W.3d 550, 564 (Mo. Ct. App. 2004) (quoting *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996)). Negating any one of these elements defeats a claim for tortious interference. *Davis v. Bd. of Educ.*, 963 S.W.2d 679, 691 (Mo. Ct. App. 1998) (applying summary judgment standard).

Though the states' approaches differ slightly, both Arkansas and Missouri treat breach of contract as an indispensable element to tortious interference. Riceland's amended counterclaim recites the Release as the contract with which Plaintiffs' suit interferes. Riceland alleges that by filing the instant suit, Plaintiffs caused a breach of the Release by the Settling Claimants. As discussed above, the quantum meruit and unjust enrichment claims against Riceland are not part of the Release and, therefore, no breach occurred when Plaintiffs filed the suit. That same analysis would apply if the Settling Claimants brought claims directly against Riceland. Riceland's count for tortious interference with the Release must be

dismissed.  *See El Paso Prod. Co.*, 269 S.W.3d at 873–74; *Davis*, 963 S.W.2d at 691.

    3.C.    Punitive Damages

Finally, because the substantive portions of Riceland's counterclaim have been dismissed, I will also dismiss Riceland's count for punitive damages.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to dismiss Riceland's counterclaim [#58] is granted.

**IT IS FURTHER ORDERED** that Plaintiff's motion to dismiss Riceland's original counterclaim [# 22] is denied as moot.

*(signature)*
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of August, 2014.